Filed 2/25/25  P. v. Seiden CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | G062706 |
| v. | (Super. Ct. No. M-19948) |
| JOSEPH JEREMY SEIDEN, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from an order of the Superior Court of Orange County, Robert Goodkin, Judge. Reversed and remanded with directions.

Rachel Varnell, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Eric A. Swenson and Jennifer B. Truong, Deputy Attorneys General, for Plaintiff and Respondent.

Joseph Jeremy Seiden appeals from the trial court's order denying his petition to terminate his sex offender registration under Penal Code section 290.5, subdivision (a) (all undesignated statutory references are to this code). Seiden argues the trial court abused its discretion in evaluating the statutory factors to determine "whether community safety would be significantly enhanced by requiring continued registration." (§ 290.5, subd. (a)(3).) We agree and reverse the order.

FACTUAL AND PROCEDURAL BACKGROUND

Over 21 years ago, Seiden pleaded guilty to certain sex crimes, triggering a duty to register as a sex offender under section 290. In August 2022, Seiden filed a petition to terminate his sex offender registration pursuant to section 290.5. He alleged he was a "[t]ier 1" offender and had registered for at least 10 years, making him eligible for terminating his registration requirement. The prosecution responded to the petition. It objected to granting the petition and requested a hearing because "[c]ommunity safety would be significantly enhanced by the petitioner's continued registration." It also filed an opposition with supporting documents. Seiden filed a response to the opposition with supporting documents.

At the hearing in May 2023, the trial court denied the petition, but allowed Seiden to petition for termination again in one year. In making its determination, the court considered the evidence and the seven factors set forth in section 290.5, subdivision (a)(3).

The trial court analyzed the first factor, "the nature and facts of the registrable offense" (§ 290.5, subd. (a)(3)), counting 15 incidents (and possibly more) involving Seiden and the victim over a nine-year period. The court described the conduct as "egregious." It took into account statements by

2

Seiden shortly after his arrest: Seiden, who was 19 years old at that time, told police officers he was aware of his wrongdoing and afraid of its impact on his reputation. One police officer responded, "'What about [the victim]'s reputation . . . [?]'" Seiden replied "he was concerned about that as well, but was more concerned about himself because he was trying to get his life on track and that would ruin his life." Seiden said, "'I'm not trying to weasel my way out of something[.] I did this with [the victim],'" and "'I always have this in me.'" Seiden admitted looking at pictures of nude boys online, and said "his sexual triggers were boys ages 8 to 15." The court found the first factor weighed in favor of denying the petition, notwithstanding the registrable offenses happening approximately 20 years before the petition hearing.

As for the second factor, "the age and number of victims" (§ 290.5, subd. (a)(3)), the trial court stated the abuse began when the victim was 6 years old and lasted until he was 15 years old. There were no other victims. The court determined the second factor weighed in favor of denying the petition, because of the victim's young age, the repeated abuse, and "five separate counts of [section] 288" to which Seiden pleaded guilty.

The trial court found the third factor, whether the "victim was a stranger at the time of the offense" (§ 290.5, subd. (a)(3)), weighed in favor of granting the petition. It recognized the victim was not a stranger and, at the time of the offenses, Seiden and the victim lived in the same house.

The trial court examined the fourth factor, "criminal and relevant noncriminal behavior before and after conviction for the registerable offense." (§ 290.5, subd. (a)(3).) It considered the child pornography on Seiden's computer. It cited statements by Seiden's mother around the time of his arrest: she described Seiden as always being "'the Pied Piper' . . . to children," and believed Seiden would not be able to change his behavior and would

3

harm another child. The trial court also recognized Seiden was convicted for driving under the influence in 2011 and for public intoxication in 2015.

The trial court's main concern was that Seiden was diagnosed with "the worst type of bipolar disorder one can have" when he was 12 years old. It stated Seiden needs to take medication for his bipolar disorder, citing the 2003 probation report. In that report, Seiden said he could not take the medication while drinking alcohol. The trial court continued, "So the Court's concern is that if he's -- if during those two time periods, he's not managing his sobriety [(a reference to his misdemeanor convictions in 2011 and 2015)] and therefore not -- I think the reasonable inference is [he is] not taking his medication . . . ." It noted, "[S]ince 2017 Mr. Seiden has been . . . living in a sober living home and . . . dealing with his sobriety. He does admit that he is an alcoholic." The trial court concluded, "[T]he Court's concern is that [the misdemeanor convictions are] recent enough and they involve alcohol, which causes the Court the concern that he's not taking his medication for the bipolar as well, which causes multiple areas of concern. So [f]actor 4 factored in favor of denial."

The fifth factor, "the time period during which the person has not reoffended" (§ 290.5, subd. (a)(3)), weighed in favor of granting the petition, as Seiden had not been "accused, arrested, or convicted, of any sex related crimes in the past 20 years."

The trial court evaluated the sixth factor, "successful completion, if any, of a Sex Offender Management Board-certified sex offender treatment program." (§ 290.5, subd. (a)(3).) It acknowledged Seiden intentionally failed to complete such a program while on probation and, due to this failure, he was imprisoned "for refusing or failing to do the sex offender treatment program." It recognized Seiden completed a sex offender treatment program

4

through parole. Nonetheless, the trial court found the sixth factor "slightly" weighed in favor of denying the petition, because he "knowingly fail[ed] to complete the treatment program" on probation.

The seventh factor, "the person's current risk of sexual or violent reoffense, including the person's risk levels on SARATSO static, dynamic, and violence risk assessment instruments, if available" (§ 290.5, subd. (a)(3)), weighed in favor of granting the petition.[1] The trial court determined: "It is the People's burden to provide evidence of his current risk and the People could have sought a current risk assessment based on that burden."

In denying the petition and setting the time to re-petition to one year, the trial court noted "it was a really close case." It explained several factors weighed in favor of granting the petition and several in favor of denying it. But "[t]he final determinative factor that slightly favored in terms of denying the petition was the concerns of his bipolar diagnosis, early childhood onset for that, and that he had continued after the date of conviction, seven years and then twelve years later to have alcohol related convictions and offenses."

DISCUSSION

Section 290 et seq. requires a person convicted of certain sex crimes to register as a sex offender. Originally, all sex offenders were subject to a lifetime registration requirement. Effective January 1, 2021, section 290

___

[1] SARATSO denotes "State-Authorized Risk Assessment Tool for Sex Offenders." (§ 290.04, subd. (a)(1).) Beginning on January 1, 2007, the SARATSO for adult male registrants has been the Static-99 risk assessment scale. (§ 290.04, subd. (b)(1).) "'The Static-99R is a revised version of the Static-99 that takes into account the age of a sexual offender based on statistics showing the risk of sexual reoffense decreases as the offender ages.'" (*People v. LaBlanc* (2015) 238 Cal.App.4th 1059, 1067–1068, fn. 6.)

was restructured to provide for three tiers of registration for sex offenders, based primarily on the offense. (Stats. 2017, ch. 541, § 2.5.) Registration requirements can now be for 10 years (tier one), 20 years (tier two), or a lifetime (tier three). (§ 290, subd. (d).) Seiden is a tier one sex offender, required to register for 10 years. (§ 290, subd. (d)(1); see § 290.5, subd. (a).)

Section 290.5 permits sex offenders in tiers one and two to petition the trial court to terminate their registration requirement. The prosecution may request a hearing and "present evidence" to demonstrate "community safety would be significantly enhanced by requiring continued registration." (§ 290.5, subd. (a)(2)–(3).) In other words, the prosecution has the burden of producing evidence to establish "terminating the registration requirement considerably raised the threat to society because" a petitioner is "*currently* likely to reoffend." (*People v. Thai* (2023) 90 Cal.App.5th 427, 433 (*Thai*).)

In making its decision, the trial court must consider: "the nature and facts of the registerable offense; the age and number of victims; whether any victim was a stranger at the time of the offense (known to the offender for less than 24 hours); criminal and relevant noncriminal behavior before and after conviction for the registerable offense; the time period during which the person has not reoffended; successful completion, if any, of a Sex Offender Management Board-certified sex offender treatment program; and the person's current risk of sexual or violent reoffense, including the person's risk levels on SARATSO static, dynamic, and violence risk assessment instruments, if available." (§ 290.5, subd. (a)(3).) If the trial court denies the petition, it must "set the time period," ranging from one to five years, "after which the person can [re-petition] for termination," and provide its reasons. (§ 290.5, subd. (a)(4).)

6

"An appellate court reviews the trial court's ruling on a petition for termination from the sex offender registry for abuse of discretion. [Citation.] To establish an abuse of discretion, a defendant must demonstrate the trial court's decision fell outside the bounds of reason, i.e., was arbitrary, capricious, or patently absurd. [Citation.] [¶] 'The abuse of discretion standard is not a unified standard; the deference it calls for varies according to the aspect of a trial court's ruling under review. The trial court's findings of fact are reviewed for substantial evidence, its conclusions of law are reviewed de novo, and its application of the law to the facts is reversible only if arbitrary and capricious.' [Citation.] A trial court abuses its discretion when its factual findings are not supported by the evidence, or its decision is based on an incorrect legal standard." (*Thai*, *supra*, 90 Cal.App.5th at p. 433.)

The Attorney General argues the trial court properly weighed the statutory factors. Seiden argues insufficient evidence supports the denial of his petition and we should reverse the denial in accordance with *Thai*.

In *Thai*, the petitioner masturbated a 12-year-old boy and pleaded guilty to "committing a lewd and lascivious act upon a child under the age of 14 years" under section 288, subdivision (a). (*Thai*, *supra*, 90 Cal.App.5th at p. 430.) More than 23 years later, the petitioner filed a petition to terminate his sex offender registration. (*Ibid*.) "The trial court stated it considered 'each and every one of the factors' and although not considering the circumstances of the offense alone, it was 'weighing that heavily'" in denying the petition. (*Id*. at p. 431.) The appellate court held: "[I]nsufficient evidence supports the trial court's conclusion community safety would be appreciably increased by requiring Thai to continue to register for five years. The prosecution failed its burden to produce evidence establishing that terminating the registration requirement considerably raised the threat

7

to society because 64-year-old Thai was *currently* likely to reoffend." (*Id.* at p. 433.)

Here, the trial court "committed the sin condemned in *Thai*." (*People v. Franco* (2024) 99 Cal.App.5th 184, 194 (*Franco*).) The prosecution failed to provide any evidence demonstrating Seiden, "at the time of the hearing, 'was *currently* likely to reoffend.'" (*Franco*, at p. 194.) The Attorney General is correct the trial court here was not "singularly focused" on the facts of the offenses as in *Thai, supra,* 90 Cal.App.5th at page 434.[2] The trial court emphasized not only the facts but also Seiden's past behavior. However, as we explain below, the facts of the offenses and Seiden's past behavior, in light of the entirety of the record here, have no bearing on his risk to community safety today.

In denying the petition, the trial court gave weight to the first, second, fourth, and sixth statutory factors. The first and second factors—"the

---

[2] The Attorney General points out three additional factual distinctions between *Thai* and the present case, none of which are relevant to deciding this case. First, the Attorney General suggests the facts of the offense in *Thai* were less severe than the present case, and references Seiden's attempts to contact the victim after his conviction. But the facts of the offenses and the behavior were far enough removed from the date of the hearing, and did not indicate Seiden was likely to reoffend today. Second, whereas the trial court in *Thai* allowed the petitioner to re-petition for termination in five years, the trial court here permitted Seiden to re-petition in one year. This factual distinction does not directly concern our review of the trial court's evaluation of the statutory factors. Finally, the Attorney General asserts the trial court here thought the seventh factor's STATIC-99 risk assessment "could be the most compelling evidence in deciding [Seiden]'s petition," but that this assessment "did not factor into the Court of Appeal's ultimate decision" in *Thai*. This assertion is based on a misreading of *Thai*. The lack of a current risk assessment contributed to the appellate court's decision. (*Thai, supra,* 90 Cal.App.5th at p. 434.)

nature and facts of the registerable offense" and the age of the victim (§ 290.5, subd. (a)(3))—concerned the circumstances of the offenses. The trial court appeared to understand the underlying offense alone was insufficient to show Seiden posed a risk to the community today. (See *Thai*, *supra*, 90 Cal.App.5th at p. 434 ["facts [of underlying offense] alone do not demonstrate Thai was a risk to the community over 24 years later"].)

While analyzing the fourth factor, "criminal and relevant noncriminal behavior before and after conviction for the registerable offense" (§ 290.5, subd. (a)(3)), the trial court focused on evidence of Seiden's behavior around the time of the arrest, including a letter written by Seiden's adopted mother. That sheds no light on Seiden's current risk to community safety today. (See *Thai*, *supra*, 90 Cal.App.5th at p. 433.)

Moreover, the trial court stated Seiden was diagnosed with bipolar disorder when he was 12 years old and convicted for misdemeanors in 2011 and 2015. It expressed concern that, due to these "recent" alcohol-related misdemeanors, he was not taking medication for bipolar disorder, which, according to a statement by Seiden in the 2003 probation report, could not be taken with alcohol. This inference is problematic for a few reasons. At the time of the hearing, nearly eight years had passed since his last alcohol-related misdemeanor. The prosecution also did not provide any evidence Seiden continued to consume alcohol after his 2015 offense and up to the time of his hearing. Indeed, the trial court recognized he had been living in a sober living home since 2017. Additionally, the prosecution failed

9

to present any evidence Seiden was still required to take that same medication.[3] Thus, insufficient evidence supports the trial court's inference.

In examining the sixth factor, "successful completion, if any, of a Sex Offender Management Board-certified sex offender treatment program" (§ 290.5, subd. (a)(3)), the trial court underscored Seiden refused or willfully failed a sex offender treatment program during probation. But his state of mind and failure to complete such a program around the time of the offenses does not show how Seiden presents a risk to the community today. Furthermore, it appears Seiden completed a sex offender treatment program while on parole.

We agree with the trial court's analysis that the remaining factors weigh in favor of granting Seiden's petition.

In sum, the prosecution failed to present evidence demonstrating "terminating the registration requirement considerably raised the threat to society because" Seiden "was *currently* likely to reoffend." (*Thai*, *supra*, 90 Cal.App.5th at p. 433.) Therefore, the trial court abused its discretion in denying Seiden's petition to terminate his sex offender registration under section 290.5, subdivision (a).

---

[3] We need not resolve the dispute whether Seiden has severe bipolar disorder.

## DISPOSITION

The order is reversed, and the matter is remanded with directions to grant Seiden's petition.


MOTOIKE, J.

WE CONCUR:


SANCHEZ, ACTING P. J.


GOODING, J.

11